**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24 B 2741 |
| | ) | |
| 301 W NORTH AVENUE, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of BDS III Mortgage Capital G, LLC ("BDS III" or "Lender") to dismiss this bankruptcy case and to bar 301 W North Avenue, LLC ("Debtor") from refiling ("Motion to Dismiss"). BDS III attached declarations and exhibits to the Motion to Dismiss. The court entered a briefing schedule. Debtor timely filed its response ("Response") and BDS III filed a reply ("Reply"). Debtor attached an exhibit to the Response and also filed an affidavit in support of it. BDS III filed additional declarations and exhibits with its Reply. No party wished to present additional evidence, so the court took the matter under advisement after the briefing schedule closed.

Having reviewed the papers submitted by the parties and the applicable law, the court will enter an order granting the Motion to Dismiss.

**I.      JURISDICTION**

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. § 1409(a).

## II.   BACKGROUND

### A.  Debtor Enters Into a Loan Agreement That Requires the Appointment of an Independent Manager

301 W North Avenue, LLC is a Delaware limited liability company.  Its primary asset is a mixed-use real estate development known as the North Park Pointe Apartments, located at 301 West North Avenue in Chicago, Illinois ("301 West North Property").  The 301 West North Property consists of a 7-story high-rise building with a partial 8th level.  It contains 69 residential units and 4,268 square feet of retail space.

On September 23, 2020, BDS III's predecessor-in-interest, BDS III Mortgage Capital J LLC ("Original Lender") made a loan to Debtor in the original principal amount of $26,000,000 ("Loan"), secured by the 301 West North Property.[1]  **Declaration of Stephen King ("King Dec"), ¶** 10 and Ex. 2.  The Loan is evidenced by a promissory note.  **King Dec**, ¶ 18 and Ex. 3.

Original Lender perfected its lien on the 301 West North Property by a mortgage dated September 23, 2020, and financing statements filed in Cook County on October 14, 2020, and in Delaware on November 12, 2020.  **King Dec**, Exs. 4 and 5.  F. Martin Paris, Jr. ("Paris") signed the promissory note and mortgage on behalf of the Debtor as president of its manager.  **King Dec**, Exs. 3 and 4.

Prior to making the Loan, an affiliate of the Original Lender sent a term sheet to Debtor.  **King Dec**, Ex. 1.  This initial term sheet required Debtor to be a "bankruptcy remote entity" and to have "one acceptable independent director[.]"  **King Dec**, Ex. 1 at 301WNAVE_0004510.

---

[1] Debtor does not concede that Original Lender assigned the Loan to BDS III.  To the extent this fact is disputed, the court need not resolve it for purposes of the Motion to Dismiss.  BDS III filed a secured claim to which no objection is on file, so it holds an allowed claim.  *See* 11 U.S.C. § 502(a).  Therefore, it is a party in interest that may request dismissal of a chapter 11 case.  *See* 11 U.S.C. § 1112(b).

To assist in Debtor's search for an individual to serve as an independent director or manager, Debtor and CT Corporation Staffing, Inc. ("CTCS") executed a staffing agreement on September 3, 2020 ("Staffing Agreement"). **Declaration of Randall L. Morrison, Jr. ("Morrison Dec")**, Ex. 4. Debtor alleged in its Response that CTCS is a leader "in the business of providing independent directors for the benefit of lenders seeking to prevent their borrowers from filing for bankruptcy protection." Response, p. 3.

CTCS designated Lisa M. Pierro ("Pierro" or "Independent Manager") as an individual qualified to serve as the independent manager. **Morrison Dec**, Ex. 3 at 29. She is currently an independent director or manager of over 500 corporate entities. *Id.* at 16.

The Staffing Agreement provides that in the event any matter came before Debtor's governing body for its consideration, Debtor would provide the Independent Manager

> *with reasonable time and assistance* to <u>investigate the matter</u> before the Board and <u>perform adequate due diligence</u> in connection therewith. Such due diligence may include, at CTCS's sole discretion, the engagement of independent legal counsel or other advisors to provide additional guidance and assistance[.]

**Morrison Dec**, Ex. 4, § 4(c) (emphasis added).

The Staffing Agreement also provides for an initial term of one year to be "automatically extended for successive one (1) year periods, unless at anytime [sic] either party elects to terminate this Agreement and gives at least thirty (30) days prior written notice of termination to the other party." *Id.*, § 1.

Additionally, the Staffing Agreement includes an indemnification provision for CTCS and the Independent Manager (referred to as the Director):

> The Company and its affiliates … shall jointly and severally indemnify, defend and hold CTCS, its affiliated companies, and all of such companies' employees, agents, officers and directors, as well as the Director, harmless from and against any and all claims … that may be incurred by CTCS or the Director arising out of or relating to any breach of any representation or warranty … or in anyway [sic] arising from the services provided or functions performed by CTCS hereunder or

the actions of the Director, other than those arising solely from the willful misconduct of either CTCS or the Director.

*Id.*, § 5.  Finally, the Staffing Agreement contains a covenant from the Debtor not to sue CTCS or the Independent Manager "other than for reason of alleged willful misconduct by either of them."  *Id.*, § 6.

The terms of the $26,000,000 Loan are memorialized in a loan agreement between Original Lender and Debtor dated September 23, 2020 ("Loan Agreement").  **King Dec**, Ex. 2. The Loan Agreement includes several provisions regarding the Independent Manager that are relevant to resolution of the Motion to Dismiss:

| SECTION | TEXT |
|---|---|
| Section 6.1(a)(xvi) | Without the unanimous written consent of all members, as well as the consent of the Independent Director, the Debtor will not "file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any Creditors Rights Laws[.]" |
| Section 6.2(a) | Debtor's organizational documents "shall provide that at all times there shall be at least one (1) duly appointed member of its board of directors or managers, as applicable (an "Independent Director") reasonably satisfactory to Lender[.]" |
| Section 6.2(b) | Debtor's organizational documents shall provide that its board "shall not take any action which, under the terms of any organizational documents" requires the unanimous vote of the board of directors or managers "unless at the time of such action there shall be at least one (1) Independent Director engaged as provided by the terms hereof[.]"<br><br>Any "resignation, removal or replacement" of the Independent Director "shall not be effective without two (2) Business Days prior written notice to Lender accompanied by evidence that the replacement Independent Director satisfies the applicable terms and conditions hereof and of [Debtor's] organizational documents[.]" |

**King Dec**, Ex. 2.

**B.  As Part of the Loan Transaction, Debtor Enters into a Limited Liability Company Agreement and Selects the Independent Manager Designated by CTCS**

Debtor was originally a Delaware limited partnership.  At or about the time it executed the Loan Agreement, the Debtor, its manager and its two members entered into the Limited Liability Company Agreement of 301 W North Avenue, LLC ("LLC Agreement").  Paris executed the LLC Agreement on behalf of one of the members and the manager.  **Morrison Dec**, Ex. 8.  He has been involved in between 50 and 100 limited liability companies and is familiar with how the rights of members and managers are typically set forth in an operating or LLC agreement.  **Morrison Dec**, Ex. 7 at 58-59.

The LLC Agreement contains multiple provisions regarding governance and corporate authority.  The provisions relevant to resolution of the Motion to Dismiss include:

| SECTION | TEXT |
| --- | --- |
| Section 6.1(a) | Debtor "shall be a 'manager managed' limited liability company[.]" |
| Page 1 | Pursuant to the Loan Agreement, Debtor "must make and hold certain covenants for a single purpose entity in the formation of a Delaware limited liability company … ("SPE Provisions")[.]" |
| Section 6.1(b) | Debtor's board of managers ("Board") "shall consist initially of two (2) Managers … one of which shall be the Independent Manager[.]" |
| Section 15.1(a)(xvi) | Debtor agreed that it would not make certain "Major Decisions" "without the unanimous written consent of all of its Members and Managers (including the Independent Manager)[.]"  One of these Major Decisions is the "fil[ing] or consent[ing] to the filing of any petition, either voluntary or involuntary, to take advantage of any Creditors Rights Laws[2] (as defined in the Loan Agreement)[.]" |
| Section 15.4(a) | "As long as the Debt remains outstanding, there shall be at least one (1) duly appointed" Independent Manager. |
| Section 15.4(b) | The Board and its members ("Constituent Members") "shall not take any action which, under the terms of this Agreement or any other |

---

[2] "Creditors Rights Laws" are a defined term in the Loan Agreement meaning "any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy[.]" **King Dec**, Ex. 2, section 1.1.

| | organizational documents of the Company requires the unanimous vote of (1) the Managers and Members of the Company or (2) the Constituent Members, unless at the time of such action there shall be at least one (1) Independent Manager engaged as provided by the terms hereof." |
|---|---|
| Section 15.4(c) | "Any resignation, removal or replacement of any Independent Manager shall not be effective without two (2) Business Days prior written notice to Lender accompanied by evidence that the replacement Independent Manager satisfies the applicable terms and conditions hereof and of any other applicable organizational documents." |
| Section 15.4(d) | "To the fullest extent permitted by applicable law … the Independent Manager shall consider only the interests of the Constituent Members and Company (including Company's respective creditors) in acting or otherwise voting on the matters provided for in this Agreement (which such fiduciary duties to the Constituent Members and Company (including Company's respective creditors), in each case, shall be deemed to apply solely to the extent of their respective economic interests in Company exclusive of (x) all other interests (including, without limitation, all other interests of the Constituent Members), (y) the interests of other affiliates of the Constituent Members and Company and (z) the interests of any group of affiliates of which the Constituent Members or Company is a part)." |
| Section 15.4(h) | "Except as provided in the foregoing subsections (d) through (g), the Independent Manager shall, in exercising their rights and performing their duties under this Agreement, have a fiduciary duty of loyalty and care similar to that of a director of a business corporation organized under the General Corporation Law of the State of Delaware." |
| Section 15.4(j) | Any provision of the LLC Agreement "requiring the consent of the Independent Manager" shall remain in effect until the Debt under the Loan "has been paid in full[.]" |

**Morrison Dec**, Ex. 8.

CTCS had designated Pierro as a qualified individual, and in the LLC Agreement, Debtor designated Pierro to serve as its "Independent Manager … unless and until she is removed, resigns or is replaced in accordance with the terms of this Section 15.4 and the Loan

6

Documents." **Morrison Dec**, Ex. 8, section 15.4(k). Pierro also is listed as a "Manager" as of the effective date on Schedule A.

Pierro executed the LLC Agreement as "Independent Manager/Special Member." **Morrison Dec**, Ex. 4, Ex. A at 32. She forwarded her signature page to Debtor on September 2, 2020. **Morrison Dec**, Ex. 6 at CT_000068.

Debtor's members, 301 W North, LLC and Keystone & Stuart LLC (collectively, "Debtor's Members"), as well as its manager, MK Manager Corp. ("Debtor's Manager"), executed the LLC Agreement. **Morrison Dec**, Ex. 8 at 32. In this version of the LLC Agreement, however, Debtor excluded the signature page previously executed by Pierro. Instead, *Paris signed his own name* over Pierro's signature block. **Morrison Dec**, Ex. 8 at 32.

Pierro testified at her deposition that she did not know why Paris would sign his name over her signature block and that she did not authorize Paris to do this. **Morrison Dec**, Ex. 3 at 65. At his own deposition, Paris testified that he could not believe that he would have known that Pierro already signed an earlier version of the LLC Agreement, otherwise "why would I put my signature on there." **Morrison Dec**, Ex. 7 at 117.

In any event, Pierro assumed her role as Independent Manager of Debtor. Subsequently, Debtor identified Pierro as a manager in several publicly filed documents. Debtor listed Pierro[3] as one of its managers in its qualification filing in 2020 and then in its annual filings with the Illinois Secretary of State for the years 2021 through 2023. **Morrison Dec**, Exs. 9-12.[4]

---

[3] The documents appear to identify Lisa M. Plerro, rather than Lisa M. Pierro.
[4] The court takes judicial notice of the public records obtained from the Delaware and Illinois Secretaries of State. *See* F.R.E. 201; *6050 Grant, LLC v. Hanson* (*In re Hanson*), 428 B.R. 475, 480 (Bankr. N.D. Ill. 2010).

Pierro testified that these publicly filed reports correctly stated that she was a manager of the Debtor as of each of the dates they were filed. **Morrison Dec**, Ex. 3 at 45-52. Debtor has not yet made its annual filing for 2024. **Morrison Dec**, ¶ 15.

### C. Debtor Defaults on the Loan and Files for Relief Under Chapter 11 of the Bankruptcy Code Without Pierro's Consent

The Loan matured on October 1, 2023. **King Dec**, ¶ 31. Debtor did not pay all amounts due under the Loan on that date, which constituted an event of default under the Loan Agreement. *Id.*, ¶ 32; Ex. 2 § 10.1.

On December 15, 2023, Lender commenced a mortgage foreclosure action against Debtor. **Morrison Dec**, Ex. 13. The day before a hearing in that action, on February 27, 2024 ("Petition Date"), Debtor filed for relief under chapter 11 of the Bankruptcy Code.

Paris signed Debtor's petition ("Petition") as president of Debtor's Manager. In signing the Petition, Paris declared under penalty of perjury that he was "authorized to file this petition on behalf of the debtor." Case No. 24 B 2741, **EOD 1**, at 4.

On March 27, 2024, the U.S. Trustee conducted a continued meeting of creditors pursuant to 11 U.S.C. § 341 ("341 Meeting"). Paris testified for Debtor at the 341 Meeting, stating that he was authorized to file Debtor's petition "acting as president of the entity." **Morrison Dec**, Ex. 1 at 38:7-8. He believed that Debtor did not have a board as of the Petition Date. *Id.* at 38:9-11.

When asked at the 341 Meeting whether an independent member of a board would have had to consent to the filing of the Petition, Paris replied, "I'm not familiar with anybody that would have held consent to file." *Id.* at 38:16-17. He could not recall whether either the Loan Agreement or the LLC Agreement required an independent director on the board. *Id.* at 39-40.

Q:      Does the name Lisa Pierro, P-i-e-r-r-o, ring a bell with you, sir?

A:      No, I don't believe Lisa Pierro does.

*Id.* at 38:18-21.

About three months after the 341 Meeting, Paris appeared for a deposition in response to subpoenas served upon him in both his individual capacity and in his capacity as Debtor's designated representative. **Morrison Dec**, ¶ 9. When asked at his deposition whether he conferred with the Independent Manager before signing the Petition and causing it to be filed, Paris stated, "I don't believe there was an independent manager." **Morrison Dec**, Ex. 7 at 141:6-7. He conceded that he did not believe that he reviewed the LLC Agreement prior to filing the Petition. *Id.* at 142.

Pierro testified at her own deposition that the Debtor did not consult with her prior to filing the Petition. **Morrison Dec**, Ex. 3 at 71, 73. Debtor, Debtor's Members and Debtor's Manager executed a Consent in Lieu of Meeting of the Members and Manager of 301 W North Avenue, LLC ("Consent in Lieu") to authorize the filing of the Petition. **Morrison Dec**, Ex. 15. This document did not have a signature block for Pierro. *Id.* When he was asked at his deposition why it was likely that the Consent in Lieu was not forwarded to Pierro, Paris stated: "I'm not aware of any involvement that she had in the entity." **Morrison Dec**, Ex. 7 at 145:21-22. Pierro testified that she never saw the Consent in Lieu before her deposition, which took place well after the Petition Date. **Morrison Dec**, Ex. 3 at 72.

Pierro testified further that she had drafted a resignation notice due to CTCS's growing concerns about nonpayment of its invoices. However, Pierro did not finalize and sign the resignation notice until April 30, 2024, when she sent it to the Debtor by email. **Morrison Dec**, Ex. 3 at 29, 31-32, 37-38; *see* **Morrison Dec**, Ex. 16. At that time, she backdated the notice to

9

August 31, 2022, which was the last date that CTCS received payment.  **Morrison Dec**, Ex. 3 at 32; *see* **Morrison Dec**, Ex. 16.  The basis for her resignation was Debtor's bankruptcy filing, which she learned about via a subpoena served in late April 2024, and Debtor's failure to pay CTCS's invoices.  **Morrison Dec**, Ex. 3 at 42-43, 53.  CTCS did not provide BDS III with notice of Pierro's resignation.  *Id.* at 41, 66.

At his deposition, Paris testified that "there was a resignation of the [Independent M]anager at some point way previous to [the Petition Date]."  **Morrison Dec**, Ex. 7 at 141:10-11.  When he was shown Pierro's April 30, 2024 email, Paris did not remember seeing her attached, backdated resignation notice.  Instead, Paris stated: "I don't know specifically the document.  This would be something like what he [an employee] was describing, but I never looked at the document."  *Id.* at 149-150.

Debtor produced no documents in discovery that support a finding that Pierro's backdated resignation notice was received by Debtor prior to the Petition Date or at any time other than April 30, 2024.  **Morrison Dec**, ¶ 21.

The LLC Agreement provides that Pierro's resignation "shall not be effective without two (2) Business Days prior written notice to Lender accompanied by evidence that the replacement Independent Manager satisfies the applicable terms and conditions hereof and of any other applicable organizational documents."  **Morrison Dec**, Ex. 8 § 15.4(c).  Debtor did not provide BDS III with any notice of Pierro's resignation.  **Reply Declaration of Stephen King** ("**King Reply Dec**"), ¶ 4.  BDS III has not received notice of a replacement Independent Manager.  **King Reply Dec**, ¶ 5.

Debtor filed its plan of reorganization ("Plan") on May 25, 2024.  The Plan values the 301 West North Property at $19.4 million.  Case No. 24 B 2741, **EOD 120**.

BDS III filed a secured claim in the amount of $30,399,708.64. Case No. 24 B 2741, Claim No. 5-1. Debtor proposes to treat BDS III's secured claim as follows: (1) pay BDS III $17.8 million[5] within 110 days of the Plan's effective date; or (2) pay BDS III $101,066.44 each month for thirty years, if BDS III makes an election under 11 U.S.C. § 1111(b)(2). These payments are calculated using a 5.5% discount rate. *See* Case No. 24 B 2741, **EOD 120** at IV(B).

Debtor requested court authority to conduct discovery in connection with its response to the Motion to Dismiss. *See* Case No. 24 B 2741, EOD 239 (Transcript of Hearing Held 7/10/24). Debtor did not pursue any discovery from either Pierro or CTCS. **Reply Declaration of Randall L. Morrison, Jr., ¶ 7.**

### III. LEGAL DISCUSSION

Pursuant to 11 U.S.C. § 1112(b), a bankruptcy court shall dismiss or convert a bankruptcy case "for cause." There is cause to dismiss a case if corporate authority to file for relief under the Bankruptcy Code does not exist. When a court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has *no alternative but to dismiss the petition.*" *Price v. Gurney*, 324 U.S. 100, 106 (1945) (emphasis added). *See In re Apex Brittany MO, LP*, No. 23-11463 (CTG), 2023 WL 8205669, at *3 (Bankr. D. Del. Nov. 27, 2023) ("It is well established that a court must dismiss a bankruptcy case if the party acting on behalf of a corporate entity in filing the petition lacked the authority to do so.") (footnote omitted); *In re Chicago South Loop Hotel Owner, LLC*, 2023 WL 3643533, at *3 (Bankr. N.D. Ill. May 24, 2023). *See also In re NNN 123 N. Wacker, LLC*, 510 B.R. 854, 858

---

[5] The Plan defines BDS III's secured claim as being "in the amount of $1,780,000.00[.]" This appears to be a clerical error, because the amount is calculated as "the sum of "Nineteen Million Four Hundred Thousand and no/100 dollars ($19,400,000.00) (the value of the Real Estate that secures all Secured Claims) less (b) $1,600,000.00, which is the total estimated amount of the Allowed Mechanic's Lien Claims."

(Bankr. N.D. Ill. 2014) ("In addition to 'cause' under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a bankruptcy case filed by a corporation.  The same is true for an LLC.") (citation omitted).

The Motion to Dismiss brings two issues before the court: (1) was the Debtor authorized to file the Petition; and (2) if not, did Debtor's corporate documents impermissibly restrict its right to file?

## A.  Debtor Was Not Authorized to File for Relief Under the Bankruptcy Code

"The burden of demonstrating cause for dismissal for lack of authority to file is on the movant." *In re Lexington Hosp. Grp., LLC*, 577 B.R. 676, 682–83 (Bankr. E.D. Ky. 2017).  *See Matter of Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994) ("Where a motion to dismiss for cause is opposed, the movant bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of the debtor's bankruptcy case.").

Consequently, BDS III bears the burden to show that Debtor lacked the authority to file a petition for relief under the Bankruptcy Code.

### 1.  The LLC Agreement required the consent of the Independent Manager prior to filing a bankruptcy case, which Debtor did not obtain

Debtor is a Delaware limited liability company.  Under Delaware state law, an LLC can act only through the authorization provided by its operating agreement or Delaware law.  *See* Del. Code Ann. tit. 6, § 18-402 (West 2023-24).  In this case, the LLC Agreement states that Debtor cannot file or consent to the filing of a bankruptcy petition without the unanimous written consent of its members and managers, including the Independent Manager.  Therefore, the consent of the Independent Manager was required to authorize Debtor to file for relief under the Bankruptcy Code.

The evidence is clear that Debtor, through Paris, filed the Petition without first obtaining the Independent Manager's consent. Paris testified at his deposition that prior to signing and filing the Petition he did not confer with Pierro and did not secure her consent. Instead, he stated that "I don't believe there was an independent manager." At the 341 Meeting, Paris asserted that the name "Lisa Pierro" did not even ring a bell for him.

In February 2024, Debtor, Debtor's Members and Debtor's Manager executed the Consent in Lieu, which did not even have a signature block for Pierro to sign. Pierro's testimony confirmed that she did not authorize the filing. She stated under oath that the Debtor did not consult with her prior to filing the Petition.

Paris's testimony that he could not recall whether either the Loan Agreement or the LLC Agreement required an independent director on the board is irrelevant. The documents speak for themselves, and what they say is unambiguous. Pierro was clearly designated as the Independent Manager and listed as such in the LLC Agreement. Pierro's consent was required to authorize Debtor to file a petition for relief under the Bankruptcy Code. Debtor did not obtain her consent. *See NNN 123 N. Wacker*, 510 B.R. at 860-61 ("It must be concluded that the uncontested documents submitted are enough to show more probably than not that TIC 0 was not authorized by its many members to file for bankruptcy.").

Since BDS III met its burden to show that Debtor lacked the authority to file a petition for relief under the Bankruptcy Code, the burden shifts to Debtor to rebut the evidence that Paris lacked authority to file a petition on Debtor's behalf. *See Woodbrook*, 19 F.3d at 317 ("That [movant] bears the burden of persuasion, however, does not eviscerate Woodbrook's obligation to produce evidence in opposition to a well-supported motion [to dismiss a chapter 11 case for cause].").

13

Debtor presented a three-pronged response in its opposition to the Motion to Dismiss. First, the court infers from Paris's deposition testimony that, to the extent he knew of Pierro's existence, Paris believed that she resigned before he filed the Petition. If she resigned prepetition, then her consent would not have been required. Additionally, in the Response, Debtor argues that Pierro's resignation constitutes acquiescence to the bankruptcy filing, or that the filing was ratified.

**2. The evidence does not support a finding that the Independent Manager resigned prior to the bankruptcy filing, that her resignation constitutes acquiescence to it, or that the filing was ratified**

**a. Pierro resigned on April 30, 2024**

Some confusion is apparent from Paris's testimony about the timing of Pierro's resignation. Having reviewed the relevant testimony and the applicable documents, however, it is clear to the court that Pierro signed and sent her resignation on April 30, 2024, about two months *after* Debtor filed its petition for relief under the Bankruptcy Code without her consent. Pierro backdated this resignation notice to August 31, 2022, which was the last date that CTCS received payment.

Although a basis for her resignation was Debtor's failure to pay CTCS's invoices, the precipitating factor was the bankruptcy filing. Indeed, during her deposition, Pierro specifically clarified her testimony about her resignation. She stated that nonpayment for services was not her sole ground for leaving, but that learning about Debtor's bankruptcy filing was another reason for that resignation. Debtor did not request that Pierro consider and authorize the filing. Nor did Debtor inform her of the filing. Pierro learned of the bankruptcy case when contacted by counsel for BDS III in April 2024 in connection with a subpoena. She submitted her resignation promptly thereafter.

Paris's testimony about Pierro's resignation is not credible.  Indeed, it conflicts with his testimony that he signed the Petition without Pierro's authorization because he did not know about her.  Moreover, in its Response the Debtor concedes that Pierro resigned on or about April 30, 2024.  *See* Response, p. 11 ("In response to the filing of this Case, the Independent Director…sent notice to the Debtor of her resignation on or about April 30, 2024[.]").

Pierro remained as the Independent Manager on the Petition Date, and her consent was required to authorize Debtor to file for relief under the Bankruptcy Code.

### b.  Pierro did not acquiesce to the filing of Debtor's bankruptcy petition

Having conceded that Pierro resigned postpetition, Debtor now asserts that Pierro acquiesced to the filing of the Petition.  "The Manager and all Members of the Debtor have authorized the filing of this Case and the Independent Director, through her actions (or inactions), has acquiesced to the filing of this Case."  Response, p. 11.

> A claimant is deemed to have acquiesced in a complained-of act where he: has full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved.

*Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014) (quotation and footnote omitted).

Acquiescence is an affirmative defense, so the burden is on Debtor to prove these elements by a preponderance of the evidence.  *See In re Sears Holdings Corp.*, No. 21 CV 5782 (VB), 2022 WL 1439369, at *6 (S.D.N.Y. May 6, 2022), *appeal withdrawn*, No. 22-1249, 2022 WL 4015753 (2d Cir. Aug. 24, 2022).

The evidence shows, however, that Pierro learned about Debtor's bankruptcy filing in April, more than a month after the Petition Date.  She resigned shortly thereafter.  These facts do not support a finding that Pierro had *full knowledge* of the underlying facts, only that she learned

15

Debtor had filed for relief under the Bankruptcy Code.  Neither do they establish that Pierro remained inactive, took steps amounting to a recognition, or acted in a manner inconsistent with repudiation.  Indeed, resigning shortly after learning about the bankruptcy case suggests she acted *consistently* with repudiation.  For all of these reasons, the court finds that Debtor has not proven that Pierro acquiesced to the filing of the Petition.

### c.   The bankruptcy filing was not ratified

Debtor argues that even if the filing of the bankruptcy case was done without proper authorization, the filing can still be valid if it was subsequently ratified.[6]  "Technically, an unauthorized bankruptcy petition may be subsequently ratified." *In re Kelly*, 649 B.R. 448, 474 n. 256 (Bankr. W.D. Pa. 2023).  Since Debtor is a Delaware limited liability company, the court looks to Delaware law to determine whether ratification of an unauthorized action is permitted and whether ratification was achieved.

Here, the Delaware Limited Liability Company Act permits ratification of void or voidable acts.  *See* Del. Code Ann. tit. 6, § 18-106(e) (West 2023-24).[7]  The questionable acts must be ratified "by the members, managers or other persons whose approval would be required under the limited liability company agreement: (1) For such act or transaction to be validly taken; or (2) To amend the limited liability company agreement in a manner that would permit such act or transaction to be validly taken, in each case at the time of such ratification[.]" *Id.* There is no question that Pierro was the Independent Manager at the time the Consent in Lieu

---

[6] Supporting its theory of ratification, Debtor argues that prepetition "[t]he Manager and all Members of the Debtor" authorized the filing and that "the Independent Director, through her actions (or inactions), has acquiesced to the filing[.]"  Response, p. 11.

[7] The Delaware General Assembly adopted § 18-106(e) in 2021 "to provide a rule different from the rule applied in *Composecure, L.L.C. v. CardUX, LLC*, 206 A.3d 807 (Del. 2018), and *Absalom Absalom Trust v. Saint Gervais LLC*, 2019 WL 2655787 (Del. Ch. June 27, 2019), that acts or transactions determined to be void generally may not be ratified." *Holifield v. XRI Inv. Holdings LLC*, 304 A.3d 896, 927 (Del. 2023) (quotation omitted).

authorizing the bankruptcy filing was executed.  Thus, the question is whether Pierro ratified the

authorization of filing a petition.

"Ratification may be either express or implied through a party's conduct[.]"  *Genger v.*

*TR Invs., LLC*, 26 A.3d 180, 195 (Del. 2011).  Clearly Pierro did not explicitly or formally ratify

the filing of the Petition.  There are no documents suggesting that she did so, and when she

learned about the bankruptcy filing, she resigned almost immediately.

> Implied ratification occurs where the conduct of a complainant, subsequent to the
> transaction objected to, is such as reasonably to warrant the conclusion that he has
> accepted or adopted it, and his ratification is implied through his acquiescence.
> Ratification of an unauthorized act may be found from conduct which can be
> rationally explained *only* if there were an election to treat a supposedly
> unauthorized act as in fact authorized.  Ratification may also be found where a
> party receives and retains the benefit of that transaction without objection, thereby
> ratifying the unauthorized act and estopping itself from repudiating it.

*Genger*, 26 A.3d at 195 (quotations and footnotes omitted).

None of the evidence before the court suggests that Pierro impliedly ratified the filing of

Debtor's bankruptcy petition.  First, the court has already concluded that she did not acquiesce.

Second, Pierro's postpetition conduct cannot be rationally explained by assuming that she elected

to treat this unauthorized act as authorized; to the contrary, the most rational explanation for her

conduct is that she wished to disassociate herself from Debtor as quickly as possible.  Finally,

Pierro neither received nor retained any benefit from Debtor's bankruptcy filing.

The evidence does not support a finding that the Independent Manager resigned prior to

the bankruptcy filing, that her resignation constitutes acquiescence to it, or that the filing was

ratified.  Therefore, the court concludes that Debtor has not rebutted the evidence that Paris

lacked authority to file a petition on Debtor's behalf.

For all of these reasons, the court finds that Debtor was not authorized to file for relief

under the Bankruptcy Code.

**B. Debtor's Corporate Documents Did Not Impermissibly Restrict Its Right to File for Relief Under the Bankruptcy Code**

Finding that Debtor was not authorized to file for relief under the Bankruptcy Code does not resolve the question of whether the Petition was properly filed. Provisions in corporate organization documents that restrict an entity's ability to file a bankruptcy petition or impede the ability to exercise fiduciary duties in furtherance of evaluation and authorization of a bankruptcy case are against public policy.

Debtor argues that the applicable provisions in the LLC Agreement fall into this category. "Courts have held that pre-petition agreements purporting to interfere with a debtor's rights under the Bankruptcy Code are not enforceable." *MBNA Am. Bank, N.A. v. Trans World Airlines, Inc.* (*In re Trans World Airlines, Inc.*), 275 B.R. 712, 723 (Bankr. D. Del. 2002). If the provisions that put the Independent Manager in place are not enforceable, then even though the Petition was filed without her consent, the Petition would have been properly filed. If that is the case, then the Motion to Dismiss must be denied.

Provisions that place an independent manager on the board of a limited liability company, with requirements that the independent manager must participate in certain corporate decisions, such as the filing of a bankruptcy petition, are not *presumptively* void. *See In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899, 913 (Bankr. N.D. Ill. 2016).

In other words, if an operating agreement creates a structure in which a director's fiduciary duties are respected and that complies with non-bankruptcy statutes or law,[8] it is enforceable. Provisions restricting the exercise of fiduciary duties that effectively nullify or

---

[8] Delaware law permits expansion, restriction or elimination of fiduciary duties in a Delaware LLC agreement. *See* Del. Code Ann. tit. 6, § 18-1101(c) (West 2023-24). The issue, therefore, is not whether "normal" fiduciary duties govern the directors, but rather, whether the applicable fiduciary duties permit proper evaluation and implementation of a bankruptcy petition.

18

eliminate the right to file bankruptcy violate public policy and are not enforceable.  *See* Restatement (Second) of Contracts § 178 (Am. Law Inst. 1981) (A "term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."); *Bank of Am., N.A. v. North LaSalle St. Ltd. P'ship* (*In re 203 N. LaSalle St. P'ship*), 246 B.R. 325, 331 (Bankr. N.D. Ill. 2000) ("it would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply").  *See also Lexington Hosp.*, 577 B.R. at 684-85 ("A requirement that an independent person consent to bankruptcy relief, properly drafted, is not necessarily a concept that offends federal public policy…. An independent decision maker cannot exist simply to vote 'no' to a bankruptcy filing, but should also have normal fiduciary duties.").  BDS III argues that "the Independent Manager Provisions expressly impose upon the Independent Manager a fiduciary duty to consider the interests not only of Lender but also those of the Debtor.  This feature is precisely what shields the Independent Manager Provisions from attack on public policy grounds."  Reply, p. 10.

In the *Lake Michigan* case, the lender agreed to forbear from enforcing certain remedies and in exchange, debtor amended its operating agreement to create a position for the lender as a "Special Member."  After defaulting on its loan, the *Lake Michigan* debtor filed for relief under the Bankruptcy Code without obtaining the special member's consent.  The lender sought dismissal, arguing that debtor was not authorized to file the petition, while the debtor asserted that the special member provisions were void as against public policy.  The *Lake Michigan* court found that because the provisions at issue "exclude[d] the Debtor's interests from consideration" by the special member, those provisions were not enforceable.  547 B.R. at 914.

In another case, the "golden share" granted to a creditor of an LLC

> the sole purpose and effect of which [was] to place into the hands of a single, minority equity holder the ultimate authority to eviscerate the right of that entity to seek federal bankruptcy relief, and the nature and substance of whose primary relationship with the debtor is that of creditor—not equity holder—and which owes no duty to anyone but itself in connection with an LLC's decision to seek federal bankruptcy relief, [was] tantamount to an absolute waiver of that right, and, even if arguably permitted by state law, [was] void as contrary to federal public policy.

*In re Intervention Energy Holdings, LLC*, 553 B.R. 258, 265 (Bankr. D. Del. 2016) (footnote omitted).

By contrast, the relevant provisions in the LLC Agreement before the court in this case require the Independent Manager to consider the interests of the Constituent Members as well as the company itself, including its creditors.

> To the fullest extent permitted by applicable law … and notwithstanding any duty otherwise existing at law or in equity, the Independent Manager shall consider only the interests of the Constituent Members and Company (including Company's respective creditors) in acting or otherwise voting on the matters provided for in this Agreement[.]

LLC Agreement, section 15.4(d).  The LLC Agreement also provides that "the Independent Manager shall, in exercising their rights and performing their duties under this Agreement, have a fiduciary duty of loyalty and care similar to that of a director of a business corporation" under Delaware law.  LLC Agreement, section 15.4(h).  The LLC Agreement imposed fiduciary duties upon Pierro, and those obligations extended to the Debtor and its Constituent Members (defined as the Board of the Debtor and its constituent members).  In order to properly exercise those duties, the Staffing Agreement required Debtor to provide the Independent Manager "with reasonable time and assistance to investigate the matter before the Board and perform adequate due diligence in connection therewith.  Such due diligence may include, at CTCS's sole

20

discretion, the engagement of independent legal counsel or other advisors to provide additional guidance and assistance[.]" Staffing Agreement, § 4(c).

Debtor points out that here, as in the *Lexington Hospitality* case, the Independent Manager must remain in place "[a]s long as the Debt remains outstanding[.]" LLC Agreement, section 15.4(a). "This coupled with the fact that the Independent Director cannot resign without first giving notice to the Lender and being replaced by an independent director acceptable to Lender, shows there is nothing independent about the Independent Director as she served solely for the benefit of the Lender." Response, p. 6.

Clearly the position of the Independent Manager was created at the request of the Original Lender. It makes sense, therefore, that the position would remain in place so long as the Loan exists. Would it be better if the Independent Manager were a permanent part of Debtor's corporate structure? The fact that the position co-exists with the Loan is just logical. It does not lead inexorably to the conclusion that the Independent Manager is not subject to director fiduciary duties affecting the ability to file a bankruptcy petition.

Next, Debtor contends that limiting the interests that the Independent Manager must consider to the Debtor's "economic interests" allows her to avoid liability for any breach of fiduciary duty. The court agrees with BDS III that "[o]n this point, the Response is at its very murkiest." Reply, p. 16. It seems to the court that it is entirely appropriate for an independent manager to consider a debtor's economic interests in determining whether it will authorize the filing of a bankruptcy petition.

Debtor also argues that the Independent Manager had no duties to Debtor's Members at all. In making this argument, however, Debtor cites no authority for the proposition that unless they impose a fiduciary duty to the *members* of a limited liability company, independent manager

21

provisions are void as against public policy.  It is likely that Debtor did not cite any cases in support of its position because the key issue on which courts focus is whether a *debtor's right to file for relief under the Bankruptcy Code* is restricted by the independent manager provisions. And, in fact, the LLC Agreement imposed fiduciary obligations on the Independent Manager with respect to the *Debtor*.  Section 15.4(d) of the LLC Agreement *requires* the Independent Manager to consider *Debtor's* interest when voting on whether to file for relief under the Bankruptcy Code.  Equally important, that same section instructs that the Independent Manager shall not consider the economic interest of other third parties, including affiliates or groups of affiliates, such as Paris or any of his affiliated entities.  The focus is on the interests of the Debtor and its creditors.  As BDS III wrote in the Reply, "[t]o the extent the LLC Agreement restricts or eliminates the Independent Manager's fiduciary duty to the Members, this is entirely consistent with Delaware law and cannot be construed to contravene public policy."  Reply, p. 15.

Finally, Debtor points out that the Staffing Agreement provides an indemnity to CTCS and to the Independent Manager as well as a covenant not to sue.  "The full indemnification … with the narrow exception for matters 'arising solely from the willful misconduct' of either CTCS or the Independent Director coupled with the covenant by the Debtor not to sue, renders the already limited fiduciary duties completely barren."  Response, p. 9.  Debtor asserts that by indemnifying and promising not to sue except for willful misconduct, the Staffing Agreement violates Delaware law, which provides that an agreement "may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."  Del. Code Ann. tit. 6, § 18-1101(e) (West 2023-24).  Since willful misconduct can be different from bad faith, the Staffing Agreement eliminates liability for acts that constitute a bad faith violation.

As BDS III notes in its Reply, of course, the key document here is the LLC Agreement, not the Staffing Agreement.  The Staffing Agreement is just a contract between Debtor and CTCS.  And, in compliance with Delaware law, *the LLC Agreement* does not permit indemnification if "the Independent Manager acted in bad faith or engaged in willful misconduct."  LLC Agreement, § 15.4(g).

For all of the reasons stated above, the court finds that Debtor's corporate documents did not impermissibly restrict its right to file for relief under the Bankruptcy Code.  Since the provisions that put the Independent Manager in place are enforceable, and the Independent Manager did not consent, the Debtor did not have authorization to file the Petition.  The Motion to Dismiss must be granted.

### C.  The Court Will Not Impose a Bar to Refiling

In its Reply, BDS III requests imposition of a bar to refiling.  It is improper to raise this issue for the first time in a reply.  That alone would warrant denial of this request.  *See United States v. Miles*, 244 F. App'x 31, 33–34 (7th Cir. 2007) (unpublished order) ("arguments not developed in the opening brief are waived").

More importantly, however, the court finds that a bar is not warranted.  If a bar to refiling were imposed, it would effectively prohibit the Debtor from deciding – properly, in compliance with the LLC Agreement – whether or not it should file for relief under the Bankruptcy Code.  If an independent manager is selected according to the applicable provisions of Debtor's organizational documents, that independent manager should be able to act in accordance with his or her duties and determine whether to consent to the filing of a new bankruptcy case.

23

## IV.   CONCLUSION

The court finds that Debtor was not authorized to file for relief under the Bankruptcy Code.  The LLC Agreement required the consent of the Independent Manager prior to filing a bankruptcy case, which Debtor did not obtain.  The evidence does not support a finding that the Independent Manager resigned prior to the bankruptcy filing, that her resignation constitutes acquiescence to it, or that the bankruptcy filing was ratified.  Debtor's corporate documents did not impermissibly restrict its right to file, and therefore the Independent Manager provisions are enforceable.  Since those provisions are enforceable and the Independent Manager's consent was not obtained, BDS III has satisfied its burden of proof.  Cause exists to dismiss this bankruptcy case.

Debtor asserts that dismissal in not in the best interests of the creditors and its estate.  This assertion is irrelevant.  If a debtor files a petition for relief under the Bankruptcy Code without the required corporate authority, the court has no alternative but to dismiss the case.

For all of the reasons stated above, the court will enter an order granting the Motion to Dismiss, without a bar to refiling.

Date:   January 6, 2025

_____
DAVID D. CLEARY
United States Bankruptcy Judge

24